UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARCUS D. McQUEEN,

                         Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                         Defendant.

_____/

Case No. 13-13169

Paul D. Borman
United States District Judge

Patricia T. Morris
United States Magistrate Judge

OPINION AND ORDER:
(1) DENYING PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S
CONCLUSION (ECF NO. 23); (2) REJECTING CERTAIN FINDINGS IN THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF NO. 20); (3)
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 13); AND (4)
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16)

On July 31, 2014, Magistrate Judge Patricia T. Morris issued a Report and

Recommendation addressing the outstanding motions in this action. (ECF No. 20). In the

Report and Recommendation, the Magistrate Judge recommends that this Court deny Plaintiff

Darcus D. McQueen's motion for summary judgment. (ECF No. 13). Further, the Magistrate

Judge recommends that this Court grant Defendant's motion for summary judgment. (ECF No.

16).

Now before the Court is Plaintiff's Objections to the Magistrate Judge's Report and

Recommendation. (ECF No. 23). Having conducted a *de novo* review of the parts of the

Magistrate Judge's Report and Recommendation to which objections have been filed pursuant to

28 U.S.C. § 636(b)(1), the Court will deny Plaintiff's Objection to the Magistrate Judge's

conclusion, and reject certain findings in the Magistrate Judge's Report and Recommendation, deny Plaintiff's Motion for Summary Judgment, and grant the Defendant's Motion for Summary Judgment.

## I. BACKGROUND

The Administrative Law Judge Jessica Inouye's ("ALJ") recitation of the medical evidence and hearing testimony is this action is extremely detailed and thorough. (Tr. 230-53). Additionally, the Magistrate Judge's Report and Recommendation as well as the Plaintiff, in her Motion for Summary Judgment, each set forth a detailed factual recitation regarding Plaintiff's medical history. (ECF Nos. 13, 20 & 23). These factual recitations are not materially inconsistent. Therefore, the Court will incorporate these factual recitations by reference here, but will reference and cite to the record as needed throughout this opinion.

Briefly, the Plaintiff protectively filed for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on August 23, 2007, alleging a disability onset date of December 31, 2004. (Tr. 11, 230). Plaintiff's application was denied on October 19, 2007 and she requested a hearing before an ALJ. (Tr. 11, 45-56, 230). The hearing was held on August 9, 2009, before ALJ John L. Christensen, Plaintiff was represented by counsel and a Vocational Expert ("VE") testified at the hearing. (Tr. 22-42).

On September 10, 2009, the ALJ issued a written decision finding that Plaintiff was not disabled. (Tr. 11-19). Plaintiff filed a request for review, which was denied by the Appeals Council on May 13, 2010. (Tr. 1-5, 11). Thereafter, Plaintiff appealed to the United States District Court for the Eastern District of Michigan and, pursuant to the a joint stipulation by the parties, the case was remanded for further administrative proceedings. (Tr. 326-32; *see also* case

no. 10-12715, ECF No. 13).

On May 15, 2012, ALJ Jessica Inouye held a heading where Plaintiff appeared and testified.  (Tr. 230, 259-306).  Thereafter, on August 9, 2012, ALJ Inouye issued her written decision finding that Plaintiff was not disabled under the Act because she could still perform unskilled work that existed in significant numbers in the economy.  (Tr. 230-53).  That decision became final after the Appeals Council denied Plaintiff's request for review on June 21, 2013. (Tr. 215-20).

Thereafter, on July 24, 2013, Plaintiff filed her complaint in this Court seeking judicial review of the Defendant Commissioner's decision.  (ECF No. 1).  The parties filed cross motions for summary judgment which were ultimately referred for decision to Magistrate Judge Patricia Morris.  (ECF Nos. 13 & 16).  On July 31, 2014, the Magistrate Judge issued a Report and Recommendation which recommended denying Plaintiff's motion for summary judgment and granting Defendant's motion for summary judgment.  (ECF No. 20).  The Magistrate Judge found that there was substantial evidence in the record to support the ALJ's finding that Plaintiff remained capable of performing a significant number of jobs in the economy.  Thereafter, Plaintiff filed her Objections to the Report and Recommendation.  (ECF No. 23).

## II. STANDARD OF REVIEW

Where a party has objected to portions of a Magistrate Judge's Report and Recommendation, the Court conducts a *de novo* review of those portions.  FED. R. CIV. P. 72(b); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).  In reviewing the findings of the ALJ, the Court is limited to determining whether those findings are supported by substantial evidence and made pursuant to proper legal standards.  *See Rogers v. Comm'r of Soc.*

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing  42 U.S.C. § 405(h)); *see also Cutlip v. Sec't of*

*Health and Human Servs.*, 25 F.3d 284, 286 (1994) ("Judicial review of the Secretary's decisions

is limited to determining whether the Secretary's findings are supported by substantial evidence

and whether the Secretary employed the proper legal standards.").  Substantial evidence is

"'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (quoting *Lindsley*

*v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)); *see also McGlothin v. Comm'r of*

*Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (recognizing that substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.") (internal quotations

omitted).  "If the Commissioner's decision is supported by substantial evidence, we must defer

to that decision, 'even if there is substantial evidence in the record that would have supported an

opposite conclusion.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting

*Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

 This Court does not "try the case de novo, nor resolve conflicts in the evidence, nor

decide questions of credibility."  *Cutlip*, 25 F.3d at 286.  Indeed, "[i]t is of course for the ALJ,

and not the reviewing court, to evaluate the credibility of witnesses, including that of the

claimant."  *Rogers*, 486 F.3d at 247; *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th

Cir. 2007) (providing that the "ALJ's credibility determinations about the claimant are to be

given great weight, 'particularly since the ALJ is charged with observing the claimant's

demeanor and credibility.") (citation omitted)).

4

III. ANALYSIS

I.     Anxiety and Depression as a Severe Impairments

        Plaintiff avers that the ALJ erred at Step Two by failing to find her anxiety disorder and

depression were "severe" impairments within the meaning of the Regulations.[1]  Plaintiff appears

to argue (1) that ALJ Inouye should have been compelled to find Plaintiff's anxiety a "severe"

impairment because the previous ALJ had come to that conclusion in his 2009 decision (Tr. 13);

and (2) there was not substantial evidence to support ALJ Inouye's determination that her

depression and anxiety "significantly limit[s] ... [her] physical or mental ability to do basic work

activities." 20 C.F.R. § 404.1521(a).

        First, the Court notes that ALJ Inouye found that Plaintiff had the severe impairments of

"borderline intellectual functioning and obesity" and therefore continued to the third step in the

analysis.  "Under the regulations, once the ALJ determines that a claimant has at least one severe

impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining

steps." *Pompa v. Comm'r of Soc. Sec*., 73 F. App'x 801, 803 (6th Cir. 2003) (citing 20 C.F.R. §

404.1545(e)).  Therefore, the Sixth Circuit has held that whether the ALJ classified certain

impairments as "non-severe" rather than "severe" is "of little consequence."  *Pompa*, 73 F.

App'x at 803; *see also Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 244 (6th Cir.

1987) (finding that the failure to find an impairment was "severe" could not constitute reversible

---

        [1] The Court notes that Plaintiff argued in her motion for summary judgment that ALJ
Inouye erred in finding her depression and her anxiety were "non-severe" impairments under the
Regulations.  However, in her Objections Plaintiff only asserts that ALJ Inouye's decision is
inconsistent with the previous ALJ's finding that she has a severe anxiety disorder.  (Obj. at 8-9).
The Court continues to examine both the disorders because they appear in the record together
and were examined by the ALJ together.

error when an other impairment was found to be severe); *Fisk v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007) (relying upon *Maziarz* and finding that "it was unnecessary to decide" whether the ALJ erred when the ALJ considered the limitations and restrictions of all the claimant's impairments, including his non-severe impairments, and those considerations were reflected in residual functional capacity).  Therefore, Plaintiff's argument that reversible error can be established on this basis is denied.

Moreover, assuming that Plaintiff could establish reversible error based on a failure to find Plaintiff's impairments of depression and anxiety "non-severe" impairments under the Regulations, Plaintiff's argument still fails because ALJ Inouye's determination that Plaintiff's depression and anxiety were not severe impairments is supported by substantial evidence in the record.  (Tr. 235-37).

In examining Plaintiff's history of depression and anxiety, the ALJ Inouye noted that Plaintiff had received minimal treatment for anxiety or depression.  (Tr. 235-37).  Indeed, in 2005, Plaintiff denied a history of depression or psychiatric treatment.  (Tr. 172).  Then in a March 2006, Plaintiff reported during a consultative evaluation that she had problems with her memory and that she had "difficulty learning new information".  (Tr. 160).  Plaintiff also noted that at times she would get very angry and aggressive and "black out" and believed that during one of those black outs she assaulted her sister's boyfriend.  (*Id*.).  Plaintiff, however, denied any history of psychiatric hospitalization or therapy.  *(Id*.).  At that March 2006 evaluation, Plaintiff's appearance was described as neat and clean and her demeanor was "cooperative, attentive, and calm."  (Tr. 162).  She also denied hallucinations, delusion, or obsessions and while she described some current suicidal ideation she denied any planning or intention.  (*Id.*).

She also described some insomnia and noted she would wake several times at time but also attributed this to her needing to feed her then infant child. (*Id.*). Plaintiff's mood was described as "euthymic" and her affect was "broad." (*Id.*). Based on this evaluation, the consultative limited license psychologist, under the supervision of Mark Zaroff, Ph.d., diagnosed Plaintiff with an "anxiety disorder not otherwise specified". (Tr. 165).

Other than the 2006 assessment there is no other medical evidence regarding treatment for any psychological conditions until May 2011 (after the initial remand). (Tr. 236, 440-46). In May 2011, Plaintiff began treatment at Saginaw Psychological Services with Sheila Little, a therapist, and reported "crying spells, loss of interest, self-isolation, argumentativeness, and aggravation, as well as some sleep difficulties." (Tr. 236, 440). Little noted that Plaintiff was grieving the recent death of a friend. (Tr. 444). Plaintiff was also observed to have an expansive affect, logical and organized thought processes, but depressed mood; her motor activity was relaxed and calm, speech was normal and her intelligence "average". (Tr. 442). Plaintiff reported that she heard noises and footsteps when no one was there and sometimes saw shadows. (Tr. 443). Little also found that Plaintiff exaggerated her symptoms. (Tr. 442). Little diagnosed her with a depressive disorder but made no mention of anxiety and assigned Plaintiff a GAF score of 50, indicating serious symptoms or problems. (Tr 236, 442). Subsequent to that 2011 evaluation Plaintiff began counseling. (Tr. 446).

In November 2011, Plaintiff underwent a psychiatric evaluation which indicated that she was taking Paxil (daily) and Vistaril. (Tr. 236, 446). Plaintiff reported that she felt hopeless, helpless, and had problems with sleeping, but denied any auditory or visual hallucinations. (Tr. 446-47). During that psychiatric evaluation, C.A.N. Rao, M.D., observed Plaintiff to have a

7

logical, relevant and goal oriented thought process, and reasonable memory but presented a constricted mood and she reported feeling no energy or motivation. (Tr. 447). Dr. Rao assessed Plaintiff with "major depression, recurrent" and a GAF score of 50 and recommended continuing her medication and a follow up appointment to re-evaluate. (*Id*.).

There are no other assessments or records from Dr. Rao in the record or any other treatment records until March 2012, when Plaintiff received a second psychological consultative evaluation by Dr. Nathalie Menendes, Psy.D. (Tr. 237, 463- 67). At that evaluation, Plaintiff reported feeling more depressed and stated that her closest relatives had died and she felt alone, sad and irritable. (Tr. 463). Plaintiff also reported feeling stressed but noted that her sleep problems had improved with medication. (*Id*.). Plaintiff also reported that her relationship with her boyfriend was rocky due to his history of drinking and noted that she was attending counseling. (*Id*.). She reported was close with her mother, had a fair relationship with one of her sisters and was close to a cousin, but noted she did not like to attend church any more because she does not like being around others. (Tr. 464). Dr. Menendes reported that Plaintiff's motor activity was normal, her contact with reality was good, her insight was fair, but her self-esteem was poor. (Tr. 464-65). Menendes opined that Plaintiff could function independently and her thoughts were "spontaneous, logical and organized" and her affect was appropriate. (Tr. 465). Menendes found that Plaintiff was able to "understand, retain and follow simple and one step instructions" and found her "social skills are good and she should be able to interact with other appropriately." (Tr. 466). Menendes, hoeever, then assessed Plaintiff with major depressive disorder of moderate severity. (Tr. 467).

The ALJ concluded that this medical record showed "limited independent treatment and evaluation" of Plaintiff's depression or anxiety where she only started therapy in May 2011 and had been prescribed medication in November 2011. (Tr. 237). Additionally, the ALJ reasonably found that Plaintiff's treatment was "at least in part, situational in nature" given that she reported the death of a friend during her evaluation with Little, the death of family members as well as relationship problems during the March 2012 evaluation. (*Id.*). The ALJ also noted that Plaintiff's activities of daily living contradicted her previously reported abilities. Particularly, the ALJ set forth a detailed recitation of Plaintiff's ability to perform a wide range of daily activities, including caring for herself and her three children on a daily basis as well as being employed as a child care provider for two other children. (Tr. 238-39, 265). Indeed, Joe DeLoach, Ph.D., a state agency physician who reviewed Plaintiff's medical evidence opined that she had only mild difficulties in maintaining social functioning and could perform simple tasks on a sustained basis. (Tr. 196-203).

Plaintiff argues that there is evidence in the record that could support finding her anxiety or depression had more than a minimal effect on her ability to work. However, "[i]f the Commissioner's decision is supported by substantial evidence, we must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Barnhart*, 475 F.3d at 730 (citation omitted). Here, the ALJ set forth a detailed examination of the medical evidence and testimony regarding Plaintiff's daily activities and abilities that contradicted and undermined Plaintiff's claims regarding the severity of her anxiety and depression. The Court does not belittle Plaintiff's disorders or hardships, however, the

> [t]he substantial-evidence standard .... presupposes that there is a zone of choice
> within which the decisionmakers can go either way, without interference by the

courts.  Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion."

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citations omitted).

Here, where there is substantial evidence to support the ALJ's decision, that decision falls within the zone of discretion and the Court must defer to the ALJ's decision. Accordingly, the Court holds there is substantial evidence to support ALJ Inouye's finding that Plaintiff's anxiety and depression were not "severe" impairments under the Regulations.

Plaintiff also argues that ALJ Inouye was bound by the previous ALJ's determination that her anxiety was a severe impairment and relies upon *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and AR 98-4(6), 63 Fed. Reg. 29771-0 (June 1, 1998).  (Obj. 7-9). Plaintiff's reliance on *Drummond*, however, is off the mark.  *Drummond* addressed the situation of when a claimant has filed two different applications for benefits and the ALJ's decision on the first application has become final.  *Drummond*, 126 F.3d at 842.  In that circumstance, absent evidence that a claimant's condition has improved, the subsequent ALJ is bound by the earlier ALJ's findings.  *Id.*  In the present action, ALJ Christensen's decision did not involve a different application and it is not a "final" decision because his decision was vacated pursuant to a remand for further proceedings.  (Tr. 326-35, Appeals Council "vacating" ALJ's decision and remanding for further proceedings); *see Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570, 571 (6th Cir. 2003) (finding reliance on *Drummond* "misplaced" when there was no final decision regarding previous application because "all other decision relevant to Wireman's social security disability insurance benefits never became final as they were vacated pursuant to remands for further proceedings.").  Therefore, ALJ Inouye was not bound by any of ALJ Christensen's previous

10

findings and evaluated the entire administrative record (including the portions of the record prior to the remand) in making her decision.

II.    Substantial Evidence to ALJ's Finding that Listing 12.05(c) was not Met or Equaled?

Plaintiff objects to the Magistrate Judge's report and recommendation on the ground that the Magistrate Judge, like the ALJ, erroneously found that Plaintiff did not met or equal the criteria of Listing 12.05(C), and that the ALJ's decision was not supported by substantial evidence.

At Step Three, it is the plaintiff's burden to set forth evidence that establishes that her impairment meets or is medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987); *see Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) ( "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner].").  The plaintiff must show that she satisfies all of the individual requirements of a listing. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

Listing 12.05 is comprised of two different parts, the diagnostic definition and also four subsidiary paragraphs: A, B, C, and D.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.  To meet or equal Listing 12.05, a plaintiff must satisfy <u>both</u> the diagnostic description as well as one of the four sets of criteria in subparts A through D.  *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001).

11

The Listing 12.05(C) states in relevant part[2]:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset fo the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.

*** 

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.  Therefore, to satisfy the Listing 12.05(C), Plaintiff must show that (1) she satisfies the introductory paragraph of 12.05, with a showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22; (2) that she has a valid verbal, performance or full-scale IQ score of 60 through 70; and (3) that she has a physical or mental impairment, other than the mental retardation impairment, that imposes an additional and significant work-related limitation of function.  *Id.*; *Foster*, 279 F.3d at 345; *Smith v. Comm'r of Soc. Sec*., No. 13-12759, 2015 WL 899207, at *17 (E.D. Mich., Mar. 2, 2015).

In the instant case, it is undisputed that Plaintiff "had valid IQ scored between 60 and

---

[2] A revised version of Listing 12.05 went into effect in 2013 and replace the term "mental retardation" with the term "intellectual disability".  *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 536 n. 1 (6th Cir. 2014).  Here, Plaintiff's case was decided in 2012 before the terminology change, and in such a circumstance courts generally use the old terminology in place at the time of the administrative decision.  *Id.*

70".[3]  (TR 242).  However, the ALJ concluded that Plaintiff did not meet Listing 12.05(C) because she had failed to evidence the required "deficits in adaptative functioning" as set forth in the descriptive definition.  (*Id*.).

"The adaptive skills prong evaluates a claimant's effectiveness in such areas as social skills, communications skills, and daily-living skills.  To determine the definition of mental retardation under the [Act], it is appropriate to consult leading professional organizations' definitions."  *Smith*, No. 13-12759, 2015 WL 899207, at *17.  "The American Psychiatric Association defines adaptive-skills limitations as 'concurrent deficits or impairments ... in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety."  *Hayes v. Comm'r of Soc. Sec*., 357 F. App'x 672, 677 (citation omitted).

Plaintiff argues that the Magistrate Judge as well as the ALJ have erroneously imposed an additional requirement upon Plaintiff by requiring that she show deficits in her adaptive functioning.  Plaintiff also argues in her objections and her motion for summary judgment that the ALJ's finding is not supported by substantial evidence because Plaintiff did produce evidence of deficits in adaptive functioning prior to age 22, specifically: (1) special education cases; (2) reports from her teacher and her mother that her adaptive functioning was below average (e.g. in high school she could not tell time on the clock and that her reading and writing levels were at the 2nd grade level and her math ability was at the 3rd grade level).  (Tr. 242, 157,

---

[3] To the extent that the Report and Recommendation found contrary to this holding, the Court rejects this determination.  (ECF No. 20, at 12, section ii).  Additionally, the Court rejects the Magistrate Judge's determination of whether the Plaintiff had a physical impairment.  (*Id*., section iii).

158).

The Court finds Plaintiff's argument that the ALJ and the Magistrate Judge have erroneously imposed an additional requirement upon her is without merit. *See Carter v. Comm'r of Soc. Sec*., 2012 WL 1028105, at *5 (W.D. Mich. Mar. 26, 2012) ("Plaintiff's argument that she was not required to prove deficits in adaptive function before age 22 is frivolous."). Indeed, in *Foster*, the Sixth Circuit made clear that a plaintiff must satisfy the diagnostic description *in addition* to one of the four subparts. *Foster*, 279 F.3d at 354 ("A claimant will meet the listing of mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria."). Moreover, Courts have consistently held that a low IQ score alone, does not satisfy 12.05(C)'s requirement that the plaintiff evidence subaverage intellectual functioning or deficits in her adaptative function during her developmental period. *Turner v. Comm'r of Soc. Sec*., 381 F. App'x 488, 491-92 (6th Cir. 2010) (holding that a plaintiff must present separate evidence "beyond present IQ scores to show that he exhibited deficits during his developmental period".); *see Foster*, 279 F.3d at 354-55 (holding that a plaintiff did not meet or equal 12.05(C) despite having an IQ in the high 60s, dropping out of school in 9th grade, failing to pass her GED and failed to show that she had deficits in her adaptive functioning before age 22 when she had more recently worked at a bank and as liquor clerk); *see also Bailey v. Comm'r of Soc. Sec*., No. 12-CV-0140, 2013 WL 2286962, at * (S.D. Ohio, May 23, 2013) (upholding the ALJ's finding that the plaintiff had failed to meet Listing 12.05(C) when the plaintiff had conflicting IQ scores (one as low as 59) and plaintiff relied only upon attending special education classes in 7th and 8th grade to evidence sub average general functioning with deficits in adaptive functioning prior to age 22, and

plaintiff had worked as a forklift operator.).

The Court also rejects Plaintiff's second argument that the ALJ's finding regarding Plaintiff's lack of adaptive deficits is without substantial evidence because Plaintiff produced evidence evidencing the opposite. Although Plaintiff is correct that she did produce some evidence that she had deficits in her adaptive functioning prior to age 22, the ALJ was aware of this evidence and referenced it in her decision. (Tr. 242). The ALJ went on, however, to find

> prior to the hearing, the claimant reported she was able to maintain a wide range
> of activities of daily living, including the ability to care for herself, perform
> chores, prepare complete[] meals, use public transportation, shop in stores, handle
> money, and care for her children. In March 2006, she indicated she sometimes
> received help with her children, but reported she was able to complete most of the
> housework. Although she noted a history of special education courses, she
> reported that she had completed coursework to be a nurse. In March 2012, the
> claimant reported she was working as a childcare worker.

(Tr. 242, internal citations omitted). The ALJ also acknowledged that Plaintiff had been fired from past jobs for being too slow, and also had instruction from job coaches on how to interact with her employer properly, yet noted that Plaintiff "completed some online schoolwork and that she provides some childcare three to four days a week", she had lived alone with her children in the past, she was able to use a computer, and her utilities had never been terminated for lack of payment. (*Id.*).

It is clear from the ALJ's decision that she found that Plaintiff's current and past abilities, including her ability to provide childcare, live alone with her children, shop, take public transportation, pay bills, do housework, prepare meals, and provide self-care undermined the aforementioned proffered evidence (teacher's reports, mother's third party report, and the enrollment in special education classes). As previously noted, it is well settled that "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the

15

record substantial evidence to support a different conclusion ... This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001); *Colvin*, 475 F.3d at 730 (citation omitted) (holding that "[i]f the Commissioner's decision is supported by substantial evidence, we must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").  Moreover, "[i]f supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

        The Court further notes that there are a number of cases indicating that when evidence exists in the record that a plaintiff has maintained employment and lived independently, as the Plaintiff did in this case, that an ALJ's finding that the plaintiff does not meet 12.05(C) due to her level of adaptive functioning will generally be found to be supported by substantial evidence. *See Smith*, 2013 WL 899207, at *18 (collecting cases); *see also Carter*, 2012 WL 1028105 (W.D. Mich. Mar. 26, 2012) (upholding the ALJ's finding that the plaintiff did not meet Listing 12.05 because she did not suffer from deficits in adaptive functioning when she had a work history that included working as a childcare monitor and at a pickle packing plant despite having been in special education classes and having a full scale IQ of only 57).

        In light of all these facts, the Court finds that the ALJ's conclusion that Plaintiff did not meet the diagnostic definition of Listing 12.05 is supported by substantial evidence such that a "reasonable mind might accept as adequate to support a conclusion."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citation omitted).

Finally, the Plaintiff argues that the ALJ erred in finding that her depression and anxiety did not constitute a "physical or mental impairment ... that impose an additional and significant work-related limit of function" as required in subpart C of Listing 12.05.  However, the Court need not reach this issue because such an argument is moot.  As set forth above, there was substantial evidence to support the ALJ's finding that Plaintiff did not meet the diagnostic definition of Listing 12.05.  Hence, Plaintiff cannot meet or equal Listing 12.05(C) regardless of whether her depression and anxiety constitute "an additional and significant work related limit of function" under subpart C of Listing 12.05.

## IV. CONCLUSION

For all the reasons set forth above, the Court DENIES Plaintiff's Objection to the Magistrate Judge's Conclusion (ECF No. 23); REJECTS certain findings in Magistrate Judge's Report and Recommendation (ECF No. 20); DENIES Plaintiff's Motion for Summary Judgment (ECF No. 13); and GRANTS Defendant's Motion for Summary Judgment (ECF No. 16).

IT IS SO ORDERED.


s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 30, 2015

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 30, 2015.


s/Deborah Tofil_____
Case Manager

17